

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION FOUR</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101136 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Jefferson County |
| v. | ) | |
| | ) | |
| TODD MEINE, | ) | Honorable Gary P. Kramer |
| | ) | |
| Defendant/Appellant. | ) | Filed: September 1, 2015 |

<u>Introduction</u>

Todd Meine (Appellant) appeals from the trial court's judgment entered upon a jury verdict convicting him of first-degree murder and armed criminal action. We affirm.

<u>Factual and Procedural Background</u>

Appellant does not contest the sufficiency of the evidence to support his convictions. The evidence, viewed in the light most favorable to the verdict, is as follows.

On April 16, 2009, Sarah Kaltenbach (Kaltenbach) was bartending at Club Imperial. Kaltenbach knew Appellant, who was a regular customer, and noticed a new customer, Matthew Crumly (Victim), in the club.

At some point, both men went into the restroom. When Victim exited the restroom, he seemed agitated. When Appellant exited the restroom, Victim said, "If you ever talk to me like that again, I will f***ing kill you." Appellant and Victim appeared to

be intoxicated. Both men ordered beers and Kaltenbach became increasingly concerned. Kaltenbach asked Appellant to do her a favor and "just walk away." Appellant agreed and went outside.

Around that time, Robert Beidel (Beidel), a cab driver, came into the bar and told Victim, "I'm ready when you are." Beidel had driven Victim to the club and had told Victim to call him when he was ready to leave. Kaltenbach tried to keep Victim inside the club until Appellant left but Victim would not wait. When Victim left, Kaltenbach went outside with him.

Outside, Appellant was standing by his vehicle, near the back passenger side door as Victim walked toward the waiting cab, which was approximately 15 feet from Appellant's vehicle. Kaltenbach testified both men started "running their mouths at each other, saying very rude comments," calling each other "motherf***ers" and saying "I'll kill you" and "I'll kick your ass."

Kaltenbach opened the cab door and Victim was about to get into the cab but Appellant "kept coming back and yelling" at Victim, causing Victim to get "riled up." Victim calmed down and was getting into the cab when Kaltenbach saw Appellant pointing a gun in their direction. Kaltenbach saw a red dot materialize on a car parked in the lot and then appear on Victim's shirt. Appellant threatened to kill Victim, aiming the gun at him. Kaltenbach took a couple of steps back to get out of the way. Victim said Appellant was "too drunk to even be messin' with" and got into the cab. Appellant then walked around the back of the taxi, extended his arm, and tried to get into the taxi. Kaltenbach saw Appellant gesturing at Victim and then heard a "click."

2

Appellant stepped back and began fiddling with the gun. Victim lunged out of the cab at Appellant and the men briefly struggled before there was a "pop" and Victim fell to the ground. Beidel said to Appellant, "You shot him over some words," and Appellant replied, "The punk b*tch got what he deserved." Victim died from a single gunshot wound to the chest fired at close range.

Kaltenbach testified Appellant bent down and picked up what she thought was the gun off the ground. Appellant said "it was in self-defense," unloaded his gun and put the gun and magazine into his vehicle.

On the front passenger seat of Appellant's vehicle, police located a magazine and a .40 caliber handgun, which had a combination flashlight/laser sight attached to it. Officers also located a can of pepper spray in a briefcase, an unloaded 9mm Beretta inside of a black bag in the back seat, an unloaded Colt handgun inside of a white box, and ear protection and safety goggles consistent with those worn at a shooting range.

The State charged Appellant with murder in the first degree (Count I), Section 565.020,[1] and armed criminal action (Count II), Section 571.015.

Defense counsel moved to exclude evidence of the additional weapons located in Appellant's vehicle as irrelevant and prejudicial. The State argued the weapons were relevant as evidence of Appellant's intent, in that Appellant chose to use the most lethal weapon available to him, that being the most powerful gun and the gun equipped with a laser sight. The trial court denied Appellant's motion, finding the evidence was relevant to the determination of the initial aggressor under Appellant's self-defense theory.

The trial court instructed the jury on the charged offense of first-degree murder and also the lesser-included offenses of second-degree murder and first-degree

---

[1] All statutory references are to RSMo 2006.

involuntary manslaughter. The court also instructed the jury on self-defense. The court refused to submit Appellant's proffered instruction for second-degree involuntary manslaughter.

The jury found Appellant guilty of first-degree murder and armed criminal action. On February 14, 2014, the court sentenced Appellant to consecutive terms of life imprisonment without probation or parole and 75 years. This appeal follows.

## Points Relied On

In his first point, Appellant argues the trial court erred in refusing to instruct the jury on involuntary manslaughter in the second degree, because it is a lesser-included offense of first-degree murder, and failing to so instruct the jury violated Appellant's rights to due process of law and to present a defense, in that there was a basis in the evidence for an acquittal of the higher offense and a conviction on this lesser offense.

In his second point, Appellant argues the trial court abused its discretion in overruling his objections and allowing the State to present testimony and evidence concerning the presence of other weapons unrelated to the crime for which he was being tried because this denied Appellant his rights to due process, a fair trial, and to be tried for the offense with which he was charged, in that these weapons were not directly connected to the crime, were inherently prejudicial, and had no probative value.

## Discussion

### Point I - Instruction

On appeal, we review the trial court's decision to give a requested instruction under Section 556.046 *de novo*. State v. Jackson, 433 S.W.3d 390, 395 (Mo. banc 2014).

4

The trial court is obligated to give an instruction on a lesser-included offense when (1) a party timely requests the instruction; (2) there is a basis in the evidence for acquitting the defendant of the charged offense; and (3) there is a basis in the evidence for convicting the defendant of the lesser-included offense for which the instruction is requested. Id. at 396; State v. Johnson, 284 S.W.3d 561, 575-76 (Mo. banc 2009).

When submitting an instruction that is more than one step down from the charged offense, there must be a basis in the evidence for acquitting the defendant of the immediately higher-included offense. Section 556.046.3. There is almost always a basis in the evidence for acquitting a defendant of the immediately higher-included offense because the jury has a right to disbelieve all, some, or none of the evidence presented in a particular case. Jackson, 433 S.W.3d 399.

Here, the parties agree Appellant timely requested the instruction for second-degree involuntary manslaughter and there was a basis to acquit of the immediately higher offense of first-degree involuntary manslaughter. The first issue then is whether there was a basis for convicting Appellant of the lesser-included offense of second-degree involuntary manslaughter.

"[T]he jury's right to disbelieve all or any part of the evidence, and its right to refuse to draw any needed inference, is a sufficient basis in the evidence to justify giving any lesser-included offense instruction when the offenses are separated only by one differential element for which the [S]tate bears the burden of proof." Jackson, 433 S.W.3d at 401. A "nested" lesser-included offense is one that is separated from the greater offense by one differential element for which the State bears the burden of proof. State v. Randle, No. SC 94646, 2015 WL 4627381, at *2 (Mo. banc Aug. 4, 2015). A

"nested" lesser-included offense consists of a subset of the elements of the greater offense, therefore rendering it impossible to commit the greater offense without necessarily committing the lesser. Id. A defendant is entitled to a properly requested instruction on a "nested" lesser-included offense and does not have to introduce affirmative evidence or cast doubt over the State's evidence. Id., quoting Jackson, 433 S.W.3d at 401-02.

In pertinent part, Section 565.020.1 defines the crime of first-degree murder as knowingly, and with deliberation, causing the death of another person. Section 565.021.1 defines second-degree murder as knowingly causing the death of another person. First-degree involuntary manslaughter is defined as recklessly causing the death of another. Section 565.024.1. Appellant's proffered and rejected instruction for second-degree involuntary manslaughter differed from the submitted instructions for first-degree murder, second-degree murder, and first-degree involuntary manslaughter, in that it required a jury finding that Appellant negligently caused Victim's death. Section 565.024.3.

Section 562.021.4, dealing with the application of culpable mental states, provides in pertinent part that "[i]f the definition of an offense prescribes criminal negligence as the culpable mental state, it is also established if a person acts purposely or knowingly or recklessly."

Therefore, proof that Appellant committed first-degree involuntary manslaughter by recklessly causing Victim's death by shooting him necessarily means there was also a basis in the evidence for the jury to convict Appellant of second-degree involuntary manslaughter by negligently shooting Victim.

On appeal, the State argues that second-degree involuntary manslaughter is not a nested lesser-included offense of first-degree involuntary manslaughter because the different mental states do not constitute differential elements. The Missouri Supreme Court recently rejected a similar argument in Randle, 2015 WL 4627381 at *2 and State v. Roberts, No. SC 94711, 2015 WL 4627393 at *2 (Mo. banc Aug. 4, 2015), finding that different *mens rea* requirements are differential elements of which the State bears the burden of proof when the remaining elements of the offenses remain the same.

Appellant was entitled to his properly requested instruction on the nested lesser-included offense of second-degree involuntary manslaughter. This Court finds, however, that reversal is not required because Appellant suffered no prejudice from the omission of the instruction.

"The failure to give a different lesser-included offense instruction is neither erroneous nor prejudicial when instructions for the greater offense and *one* lesser-included offense are given and the defendant is found guilty of the greater offense." Johnson, 284 S.W.3d at 575-76 (trial court instructed jury on charged offense of first-degree murder and on lesser-included offense of second-degree murder, but refused the defendant's request for instructions on second-degree murder without sudden passion and voluntary manslaughter).

In State v. Glass, 136 S.W.3d 496, 515 (Mo. banc 2004), the trial court instructed the jury on first- and second-degree murder and the jury found the defendant guilty of first-degree murder. On appeal, the defendant argued the trial court erred in failing to instruct the jury on the lesser-included offense of involuntary manslaughter. The Missouri Supreme Court held:

When a jury is "presented with instructions on murder in the first degree and murder in the second degree, [and] had the opportunity to find that [the defendant's] actions were not deliberate" but nonetheless convicts of first degree murder, "no reasonable basis exists to suggest that the jury would have reduced the conviction had they been presented with" a different lesser-included offense instruction. State v. Jones, 979 S.W.2d 171, 185 (Mo. banc 1998). That is, when a jury is given an instruction on a lesser offense but finds the defendant guilty of first degree murder, there is no error in failing to give a different lesser offense instruction because the jury has already been given an opportunity to reject the element of deliberation and did not do so.

Id. at 515.

This Court recognizes that the Missouri Supreme Court in Jackson, 433 S.W.3d at 395, recently stated that if the requirements for submitting a lesser-included nested instruction are met, the failure to give the requested instruction is reversible error. The Court went on to explain in a footnote that although a finding of prejudice for failing to give a lesser-included offense instruction is logically inconsistent with the fact that the jury convicted the defendant of the greater offense, the Court need not reconcile these factual inconsistencies because "prejudice is presumed when a trial court fails to give a requested lesser offense instruction that is supported by the evidence. State v. Redmond, 937 S.W.2d 205, 210 (Mo. banc 1996)." Jackson, 433 S.W.3d at 395, n.4.

This Court, however, finds Jackson and Redmond to be distinguishable from Johnson, Glass, and the case *sub judice*. In Jackson, 433 S.W.3d at 394, and Redmond, 937 S.W.2d at 207-08, the trial court instructed the jury only on the charged offense and did not instruct on any lesser-included offenses. Those cases are readily distinguishable from Johnson, 284 S.W.3d 561, and Glass, 136 S.W.3d 496, and the reasoning therein,

8

because in those cases the trial court did instruct the jury on at least one lesser-included offense.[2]

Here, the trial court instructed the jury on first-degree murder ("knowingly" and with "deliberation"), second-degree murder ("knowingly"), and first-degree involuntary manslaughter ("recklessly"). The trial court's failure to give a third lesser-included instruction on second-degree involuntary manslaughter ("negligently") was not prejudicial because the jury was instructed as to two lesser-included offenses and found Appellant guilty of the greater offense, which required a finding that Appellant acted knowingly and with deliberation. Appellant's Point I is denied.

Point II

In his second point on appeal, Appellant argues the trial court erred in allowing the State to present testimony and evidence concerning the presence of other weapons in Appellant's vehicle, which were unrelated to the crime for which he was being charged. Appellant filed pre-trial motions to exclude this evidence, which were denied. At trial, Appellant requested, and the court granted, a continuing objection to this evidence.[3] Appellant included the issue in his post-trial motion for a new trial; thus, the issue is preserved.

"Determination of the relevancy and admissibility of evidence is a matter clearly within the discretion of the trial court and will not be reversed in the absence of an abuse of that discretion." State v. Kidd, 990 S.W.2d 175, 178 (Mo. App. W.D. 1999). The trial

---

[2] Notably, Johnson and Glass were decided after Redmond but before Jackson. The Missouri Supreme Court's concurrent application of these two standards suggests the Court finds them compatible.

[3] The State's contention that Appellant waived this issue by announcing "no objection" to the admission of photographs of the weapons at trial is without merit. The trial court had granted Appellant's continuing objection to this evidence only moments earlier, and Appellant's subsequent statement of "no objection" is reasonably understood to mean that Appellant had no objection other than the continuing objection. See State v. Baker, 103 S.W.3d 711, 716-17 (Mo. banc 2003).

court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable that it indicates a lack of careful consideration. State v. Forrest, 183 S.W.3d 218, 223 (Mo. banc 2006). We will reverse only when the error was so prejudicial that it deprived the defendant of a fair trial, meaning that there is a reasonable probability that the result of the trial would have been different had the evidence not been admitted. Id. at 223-24.

To be admissible, evidence must be logically and legally relevant. State v. Anderson, 306 S.W.3d 529, 538 (Mo. banc 2010). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." Id. Evidence is legally relevant when its probative value outweighs any prejudice. Id.

It is undisputed that Appellant caused Victim's death by shooting him. The central issue in this case was Appellant's intent in doing so. Appellant was charged with first-degree murder, a conviction of which requires a jury finding he acted knowingly and with deliberation. Section 565.020.1. Deliberation occurs when the actor has time to think and intends to kill the victim for any period of time, no matter how short. State v. Dailey, 456 S.W.3d 854, 857 (Mo. App. E.D. 2014). Deliberation may be inferred from the circumstances surrounding the crime. Id.

Here, evidence that Appellant possessed a range of weapons and chose a large caliber handgun fitted with a laser sight tends to prove he acted with deliberation and intent to kill. The trial court did not err in allowing the State to present evidence of Appellant's possession of additional weapons at the crime scene. Appellant's Point II is denied.

## Conclusion

The judgment of the trial court is affirmed.

_Sherri B. Sullivan_
Sherri B. Sullivan, P.J.

Patricia L. Cohen, J., and
Kurt S. Odenwald, J., concur.

11